Good morning, Your Honors. Martin Guajardo on behalf of Andres Perez Zamora. Good morning. We have a number of issues in this case, and I imagine that as a practical matter, once we get this far down the road, some of those items we lose sight of. And we have an individual in this country who's been here almost 20 years. He's married and has his children, albeit young. And he's trying to do what hundreds, thousands of individuals have tried to do over periods of time since we established borders in this country. That is, trying to make a go of it with his family and regularize his status. We use this word regularize status to in some way put him in a position where all his conduct is legitimate. He works with an authorization as required. And at some point, he'd be free to travel with his family, if it means out of the country. Well, we can't get there, and the litigation that's gone on both with the immigration judge as well as the Board of Immigration Appeals and here now brings us to the question of what do we do with this cancellation application that was never heard by the immigration court? And we have what appears, at least from our side of the fence, some issues that the court – one issue in particular that the court and circuit has now dealt with, and that is the domestic violence and whether that constitutes – this court has recently found that, in fact, domestic violence – if you've been convicted of domestic violence, that you do not have the required good moral character. Here, we have a no low plea to a 243 under California Penal Code. The battery is not the same as under the California Penal Code for the 273.5, which is the domestic violence portion of it. But be that as it may, we found ourselves several years back in front of the immigration judge who attended to the case that looked at the – initially the asylum case, and then at some point as to the question as to whether he would allow the petitioner to apply for cancellation of removal, grappling with the question of was he eligible, was he here enough time with this conviction. Even though he pled no low, would it bar him from relief? I think that now as we look at the entire record, I think it's clear that we've had some decisions that clarify and amplify the availability of that relief. I think that this court is postured now to be able to look at the entire record and say, well, let's have the immigration judge look at this case again and make a determination whether he is in fact eligible for cancellation of removal based on the facts that we have, and at the same time as a practical matter, make a determination if the agency now provides for a vehicle whereby he can apply for any other alternate form of relief, and even if it's before the court, that we consider that. I don't know that – I don't know that we advance anyone's case any further – any more, whether it's the government's position or even the petitioner's position by turning a blind eye and a deaf ear to the practical remedy that's available to us. Here we know that there's been changes in the law. We have part of our record, part of what we've submitted as the excerpts of record on our side. We have a visa petition that has a priority date of April 30, 2001. And for those of us that are immersed in the immigration field, that's significant, because having achieved that priority date allows for the benefit under Section 245I. Essentially, if you will, allows the individual who entered this country without the proper inspection, without the proper admission, to pay his thousand dollars, now the thousand dollars, and make his application for adjustment of status. This case is one that involves an individual with a charging document that we know is a notice to appear. So jurisdiction would – jurisdiction on that particular case would be properly before the immigration court. So if this court were to find that we should revisit that cancellation, it may be that not only cancellation will be revisited, but that we will be able to take a look at whatever other form of relief is available to him. There's a copy of his wife's permanent resident card. And looking at that, those, you know, again, recognizing the eligibility for citizenship, we know that individuals that have been in the country for five years with a green card, they become eligible to make an application for naturalization. There may be, at some point, there may be an immediate relative benefit for him. And I share this with the Court, and I take the time that I have for the argument. I think we've laid out the various issues that are raised in our briefs, but I think that in making a decision here that we should give, we should give some consideration to looking at a case and also as to what happens to this family as a practical matter. I think that this Court has the authority to be able to have this case sent back to the immigration judge, have them take a look at the availability of relief under cancellation, and recognizing that there is relief that is maturing as a result of all these other applications, knowing that as a practical matter we're making the right decision. We are looking at all the facts in this case and looking at this particular family and saying, well, this is the right result. It's the right thing to do. I think that the issues with regards to, in particular, the question of whether the issue of eligibility for cancellation was actually raised, I think those issues there, as we look at what the board looked at, the transcript that we have, we recognize that there was initially an application for asylum for a Mexican national. I think that having taken charge of the case back then, we were able to advise the Court. This is an application that maybe shouldn't be considered at this juncture. There's other issues here. Let's move on. I think when the Court granted voluntary departure and there was no appeal to the grant of voluntary departure by the immigration service, I think that we had a concession there to some extent, that there was no bar to the availability of discretionary relief. So as a practical matter, I think that this Court can return the case to the immigration judge, and I think there's available relief for us as well. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court. Jeffrey Buchholz from the Department of Justice for the Attorney General. I don't want to be unsympathetic to the concerns that my opposing counsel has just expressed concerning Mr. Zamora's situation and his family. What I'd like to do briefly is just address the law that I think applies here. The Supreme Court in Doherty made clear that the Board of Immigration Appeals has considerable discretion to deny remand, to deny reopening when the alien essentially is seeking a second bite at the apple, that just like in the civil context for Rule 59 or Rule 60 motion, there has to be some justification for why the point wasn't argued before, why the claim wasn't raised before, the relief wasn't applied for before, or else you're essentially allowing a second bite at the apple. The Supreme Court, in fact, in Doherty made clear that while finality is important and delay is problematic in any context, that those concerns apply with particular force in the removal context, because in the removal context, after all, what the alien is seeking is to stay in the United States. So the question here is whether the Board abused its discretion by not remanding because the Board held that cancellation was a remedy that Mr. Zamora could have applied for the first time around. Now, in his brief to this Court and in his brief to the Board, Mr. Zamora makes the argument that's incorrect because new evidence became available after the immigration judge hearing that allowed him for the first time to apply for cancellation. What he characterized as new evidence that would justify reopening or remand, excuse me, was the INS's relative acquiescence in the finding of good moral character in the context of voluntary departure. And now in this Court, he argues that the law has changed under Vera Viegas about how you can prove presence in the United States. The INS's failure to appeal the grant of voluntary departure and the subsidiary issue of good moral character embodied within the voluntary departure grant is not new evidence. It's not a change in law. The same arguments that Mr. Zamora in fact made to the immigration judge in support of voluntary departure, in support of good moral character, he could have made those exact same arguments in support of cancellation. And just as Mr. Vera Viegas presented a variety of different kinds of evidence in the absence of, strictly speaking, documentation of his presence, Mr. Zamora could have done the same. And I would submit that the Board did not abuse its considerable discretion to decline to give Mr. Zamora what amounted to a second bite of the apple, that he could have applied for cancellation before. He might have gotten it. He might not have. He could have applied. And no remand is necessary to allow him to apply. I would just like to say briefly to mention a couple of things that I think are not properly presented here, just to be clear about it. One is the argument in Mr. Zamora's brief that the immigration judge violated a regulation by not advising him that he appeared to be eligible for cancellation. Mr. Zamora did not argue that to the Board. It's therefore not exhausted. And under a variety of cases of this Court, it's clear that this Court lacks jurisdiction to consider that. The final thing that I would say, if Your Honors don't have any questions, is that I don't know what the current status is of Mr. Zamora's marriage, of his wife's visa petition on his behalf, or of his V visa eligibility if his wife's petition remains pending. I doubt that after this long that that petition remains pending. And I think that we all would have heard if a visa had been granted to Mr. Zamora during the pendency of this petition for review. But it may be that some relief might be available in the future to Mr. Zamora through his wife or otherwise. I don't know. That isn't before this Court. But the legal questions that are before this Court, I would submit, have a simple answer. The Board did not abuse its discretion. This Court should deny the petition for review. If Your Honors don't have questions, I would stand on that.  Thank you, counsel. Thank you. Do we have some rebuttal? Thank you, Your Honor. The matter is submitted on our side. Thank you. Thank you for your arguments. The case, as heard, will be submitted, as will the other cases that are indicated on the calendar as submitted on the briefs. And the Court will be in recess for the morning. Thank you. This Court will recess and stand adjourned. Thank you. Okay. Thank you.
judges: Thomas, Graber, Paez